UNION AND PLANTERS' BANK OF MEMPHIS v. W. M. FARRINGTON et al.

1. CONVERSION. *Collateral security.* A conversion is the appropriation of the thing to the party's own use, or its destruction or exercising dominion over it in exclusion or defiance of the owner's right or withholding possession under a claim of title inconsistent with his own.

2. Where F. & W. borrowed money of bank on a note giving stock in gas company as collateral security, which was endorsed in blank, with power of attorney to transfer on the books of the company, under an agreement in the note that the bank might protect itself by sale of the stock, and before note fell due, the bank had the stock transferred to it on the books of the gas company, but not intending thereby to prejudice the rights of F. & W., and afterwards the bank insisted on its right to the dividend declared on the stock and on the right to vote it, but tendered F. a proxy to vote same. *Held,* these facts do not show a conversion of the stock by the bank.

3. STOCKS. Where stock in a corporation is endorsed in blank with power of attorney to transfer on the books of the corporation, and delivered to a bank as collateral security for a note, the legal and equitable title to same passes to the bank.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. R. J. MORGAN, Ch.

Union and Planters' Bank v. Farrington.

CRAFT & COOPER for complainants.

W. MESSICK, HARRIS & TURLEY and GANTT & PATTERSON for defendants.

DEADERICK, C. J., delivered the opinion of the court.

The bill in this case was filed in the chancery court at Memphis, to recover a balance of about $10,000 or $11,000, remaining unpaid upon the following note:

"MEMPHIS, TENNESSEE, March 4, 1874.

Ninety days after date we, or either of us, promise to pay to the order of the Union and Planters' Bank of Memphis eighty-three thousand, two hundred and twenty-eight dollars, for value received, payable at the Union and Planters' Bank of Memphis, with interest at ten per cent per annnm after maturity."

"As collateral security for the payment of this note we have deposited with the said bank 805 shares of Memphis Gas Light Company, and agree, in the event of a decline in the value of said collaterals, to deposit with the same, additional collaterals, from time to time, in such sufficiency that the saleable market value of the entire collaterals shall be at least —— per cent in excess of this debt. A failure to deposit additional collaterals as agreed, or to pay the note at maturity, shall be full and sufficient authority for said bank to sell aforesaid collaterals, at public or private sale, with or without notice, the net proceeds thereof, in whole or in part, as may be necessary, to be applied to the payment of this debt.

WM. B. GREENLAW,
WM. M. FARRINGTON."

The defenses to the suit by answer and cross-bill, are: First, That the bank had converted the collaterals and were liable for their value at the time of the conversion. Second, That by its wrongful act the bank had been the occasion of the loss of a $7\frac{1}{2}$ per cent dividend declared upon the stock, and if not liable for the conversion, it was liable for the amount of said lost dividend. Third, That the bank surrendered certain securities deposited by Greenlaw for said indebtedness, without the consent of Farrington. Green-

law being dead and insolvent.   Fourth, That the bank is indebted to Farrington in about the ·sum of $765· for money paid upon other indebtedness by mistake, in excess of the sum due.

The principal question discussed arises upon the first proposition.   The chancellor held that the bank had converted 395 shares of the 805 shares, and was liable for their value, which was par at the time of the conversion.   He also held that the bank was liable for the dividend of $7\frac{1}{2}$ per cent, in city notes declared upon the 410 shares not converted, because of negligence in failure to collect said notes, or allow defendants to do so, until they became worthless, and also held that the bank was liable for the said dividend on the 395 shares of stock converted.   The chancellor also allowed defendants credit for securities surrendered, and for excess of payment on other indebtedness.

The complainants appealed, and defendants have filed the record for writ of error, complaining that the complainants were not charged with the conversion of the whole 805 shares of stock.   The Referees have recommended an affirmance of the decree.   Both parties have excepted to the report.

The conversion adjudged consists in the transfer of the stock at the instance of the bank, to its name, on the books of the Gas Company.   The argument is, that this divested the title out of the depositors and vested it in the bank.   Before this was done the bank held the certificates of stock delivered to it by its creditors, as collateral security, with a blank power of attorney on the back of each certificate, signed by

·the parties in whose names the stock and certificates stood, in the following form :

> " For value received, —— we hereby authorize —— to transfer to —— —— shares of the capital stock of the Memphis Gas Light Company, on the books of said company.
>
>     Witness —— hand, this — of ——, 18—."
>    (*Signed.*)

Before the note sued on was executed, 410 shares ·of the collaterals included in the 805 shares already stood ·on the books of the Gas Company, in the name ·of the bank, transferred at its instance to it. . And this was known to the obligors of the note at the time it was executed.

A conversion is the appropriation of the thing to the party's own use, or its destruction or exercising ·dominion over it in exclusion or defiance of the owner's right, or withholding possession under a claim of title inconsistent with his own: 2 Greenl. Ev., sec. 642.

Was the transfer of this stock to the bank, at its instance, such a conversion?

The debtors had delivered the certificates of the ·pledged stock with power of attorney for its transfer ·on the books of the Gas Company, and by such transfer, in the language of this court in *Cornick* v. *Richards,* "the title passes and is completely transferred, whether in case of collaterals or an absolute sale": ·3 Lea, 25.

The same doctrine is subsequently held in the case ·of *Cherry* v. *Frost,* in which stock with blank certificates was pledged by Cherry to the bank, for a loan of money, and was afterwards pledged by the bank for a loan to it, which latter pledge was held superior

to Cherry's right upon the ground that the deposit of the certificate and blank assignment passed the title, legal and equitable, to the bank: 7 Lea, 1.

These cases show very clearly that the title to the stock was transferred by the debtors to the complainants as completely and as fully by the delivery of the certificates of stock and the blank assignment thereof, as could have been done by the transfer upon the books of the Gas Company. And unless the latter transfer was intended to assert a right to the stock, in defiance of, or inconsistent with the right of, defendants, it could not *per se* operate as a conversion of the stock in such a sense as to make the complainants liable for its value, at the time of its supposed conversion, notwithstanding it may have depreciated before the maturity of the note it was pledged to secure.

We think the record very satisfactorily shows that both parties regarded the transaction in the light in which it was viewed at its inception—a pledge of stocks to secure a debt. On the one side a right to sell the stock at the maturity of the note for the satisfaction of it, if not then paid. On the other, the rights to a surrender of the stock if the note was paid at maturity. Defendant Farrington, however, although he knew that the 395 shares of stock had been transferred upon the books of the Gas Company the day after it was done, and objected to it, or complained of it, still treated it as a pledge of the stock until a few days before the maturity of the note. He insists that he then learned that the bank had no

22—VOL. 13.

right to transfer the stock to itself on the books of the Gas Company, and maintained thereafter that by that act they had converted the stock and were liable to account for its value at the time of the conversion.

He does not pretend that the bank claimed the absolute title to the stock, nor that they denied his right to redeem it, nor that the bank insisted upon any other right in respect to the stock itself than that stipulated in the original contract. But as evidence of the conversion, defendants say that the bank insisted upon their rights to the dividend declared upon it, while held by it, and that they claimed the right as owner to vote it, although they tendered to him a proxy authorizing him to vote the stock. These facts are relied upon to show a conversion. We do not think they are sufficient to establish any intention upon the part of the bank to set up a claim of title to the stock, inconsistent with the rights of the defendants to pay the debt and redeem it.

The bank may have been mistaken as to its rights in respect to the dividends declared upon the stock while held by it as a security for their debt, and as to their right to vote upon it. How this is, it is not in our view necessary now to determine.

The question of conversion is a mixed one of law and fact. But we do not think a mistake as to the legal rights growing out of the transfer of stock as collateral security, can be held to be of itself sufficient evidence of a conversion. Obviously, no such purpose was entertained by complainants, nor until shortly before the sale of the stock was any such idea enter-

tained by defendant Farrington. The bank contin-
uously held the stock pledged up to the time of the
sale. It was therefore always ready and willing to
comply with its obligation to reconvey the stock on
the payment of the note. And the fact of the trans-
fer on the books of the Gas Company to it, presented
no impediment in the way of the fulfillment of its
contract. This transfer was made to more certainly
secure the objects of the contract, and not to preju-
dice the right of defendants to a return of the stock
upon the payment of the note. The bank desired to
protect its claim to the stock that it might more
certainly have it to return when the note was paid.
That it sought or intended to deprive defendants of
any benefit of their contract to have the stock re-
turned upon payment of the note, there is not the
slightest reason to believe. This is exactly what de-
fendants contracted for, and what they have a right
to demand. If the complainants have sought or
claimed more than they are entitled to, their claims
should be disallowed and they should also be held to
account for any injury imposed upon defendants. But
we do not think either party apprehended or intended
any conversion of the stock by complainants. And
upon this point we hold that the report of the Ref-
erees and decree of the chancellor are erroneous and
should be set aside, and that the complainants should
have a decree for the amount of their note and inter-
est, subject to the credit for the net proceeds of the
sale of the stock, and other credits hereinafter men-
tioned. The amount of the dividend declared by the

Gas Company, payable in city notes, the complainants must account for, because it claimed to be entitled to the dividends on the pledged stock and prevented the defendants from receiving it, and it must receive it in the city notes, because it is clear it was declared upon the condition that it should be so payable, and otherwise would not have been declared.

The security improperly surrendered by the complainants in compromise of the Goodman bill, should also be credited to defendants as well as the excess paid in settlement of Myers & Co.'s claim by Farrington. With this modification as to the alleged conversion the chancellor's decree will be affirmed, and the costs of this court will be divided equally between complainants and defendant Farrington.